IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ADRIAN DIAZ a/k/a Carlos Hernandez a/k/a Carlos Medina, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | CIV-13-229-M |
| ANITA TRAMMEL, Warden, | ) ) ) | |
| Respondent. | ) | |

SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the convictions for Assault and Battery with a Dangerous Weapon, Pointing a Firearm at Another (two counts), and Maiming entered against Plaintiff in the District Court of Oklahoma County, Case No. CF-2009-4032. Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's trial (hereinafter "TR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

In an amended information filed in the District Court of Oklahoma County on October 22, 2009, Petitioner was charged with seven offenses, including two counts of Assault and

1

Battery with a Dangerous Weapon, two counts of Kidnaping, two counts of Pointing a Firearm at Another, and one count of Maiming.

In a jury trial conducted in February 2011, Petitioner was convicted of one count of Assault and Battery with a Dangerous Weapon, two counts of Pointing a Firearm at Another, and one count of Maiming. Petitioner was found not guilty of the second Assault and Battery charge and the Kidnaping charges. The jury recommended sentences of six years of imprisonment, one year of imprisonment, one year of imprisonment, and seven years of imprisonment for these convictions, respectively. Petitioner was sentenced accordingly.

Petitioner appealed the convictions, asserting in the appeal that there was insufficient evidence to support his convictions because the prosecution did not disprove he acted in self-defense. Response, Ex. 1 (Brief of Appellant). Petitioner also asserted that his convictions for Assault and Battery with a Dangerous Weapon and Maiming violated double jeopardy protections in both the United States Constitution and Oklahoma's statutory double jeopardy provision, Okla. Stat. tit. 21, § 11. In a third ground for relief, Petitioner asserted that the trial court erred and denied him due process by failing to *sua sponte* instruct the jury that self-defense is a defense to the offense of Maiming. Finally, Petitioner asserted that cumulative errors occurring in his trial deprived him of his Due Process right to a fair trial. The State responded in opposition to each of these grounds. Response, Ex. 2 (Brief of Appellee).

The Oklahoma Court of Criminal Appeals ("OCCA") affirmed the convictions and sentences in a summary opinion in which the court rejected each of Petitioner's grounds for

2

relief. Response, Ex. 3 (<u>Adrian Diaz v. The State of Oklahoma</u>, Case No. F-2011-158 (Okla. Crim. App. Apr. 4, 2012)(unpublished op.)).

II. <u>Standard of Review of Constitutional Claims</u>

In his Petition, Petitioner raises the same claims he asserted in his direct appeal. In fact, Petitioner has simply "cut and pasted" the portion of his brief filed in the state appellate court which includes a statement of facts, his claims, and the arguments in support of those claims presented in his direct appeal. The OCCA denied each of these claims on its merits.[1] Consequently, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard for reviewing the claims.

Under the AEDPA, a federal court cannot grant habeas relief unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

The reviewing court first determines "whether the principle of federal law on which

---

[1]"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct. 770, 784-785 (10th Cir. 2011).

3

the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." Bland v. Sirmons, 459 F.3d 999, 1009 (10th Cir. 2006). If clearly established law exists, the court must determine whether the state court's decision is "contrary to" established Supreme Court precedent, and this standard is satisfied if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Williams, 529 U.S. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). Under this deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010)(internal quotations and citation omitted).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). See Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). In making this analysis, the reviewing court must presume the state court's factual findings are correct unless the petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

III. Sufficiency of the Evidence

Petitioner contends that there was not sufficient evidence for the jury to have found him guilty of the offenses of which he was convicted beyond a reasonable doubt. Petition, at 16, 20 (ECF page numbering). The OCCA rejected this claim in Petitioner's direct appeal. Petitioner does not present any argument as to why that disposition of his claim is incorrect.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). For habeas review, the Supreme Court has clearly established that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson).

In applying this standard, the court's review "is sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004)(quotations and alterations omitted). The court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." United States v.

Triana, 477 F.3d 1189, 1195 (10th Cir. 2007)(quotation omitted).

Petitioner contends that the evidence was sufficient to raise a reasonable doubt as to whether Petitioner acted in self-defense and insufficient to prove he was not acting in self-defense beyond a reasonable doubt. Respondent contends that the only evidence of self-defense was Petitioner's self-serving testimony at trial which was not supported by the evidence.

In denying this claim in Petitioner's direct appeal, the OCCA explained the relevant law in Oklahoma concerning the defense of self-defense. The court stated that "[s]elf-defense is an affirmative defense, which justifies conduct where 'a reasonable person, in the circumstances and from the viewpoint of the defendant.' would reasonably believe he was in imminent danger of death or great bodily harm." Response, Ex. 3, at 2 (quoting Davis v. State, 268 P.3d 86, 114 (Okla. Crim. App. 2011)). The court further stated that "[s]elf-defense is not available to an aggressor, or to a person who voluntarily enters into a conflict armed with a deadly weapon," and "[w]here a defendant raises self-defense, the State must disprove that claim beyond a reasonable doubt." Id. In Oklahoma, when a defendant presents evidence of self-defense at trial, the State has the burden to prove beyond a reasonable doubt the defendant did not act in self-defense. Dawkins v. State, 252 P.3d 214, 220 (Okla. Crim. App. 2011); McHam v. State, 126 P.3d 662, 667 (Okla. Crim. App. 2005).

The OCCA concluded that in Petitioner's case "[t]he evidence, while conflicting, supports the jury's verdict; Diaz, whether or not he was the initial aggressor, became the aggressor when, instead of letting the fight end, he got his gun, shot it, pointed it at the

victims, and used it to inflict serious injuries on both men." Response, Ex. 3, at 2-3. The appellate court's factual findings are presumptively correct, and Petitioner has not overcome the presumption with clear and convincing evidence.

The extensive trial record in Petitioner's case reflects evidence that he invited two individuals with whom he worked at that time to his home, that Petitioner and the two individuals drank an excessive amount of alcohol that was offered by Petitioner, and the two individuals attempted to leave Petitioner's home. Somewhere in the house or garage a fight ensued between Petitioner and the individuals. The individuals, who were unarmed, again attempted to leave the residence, but Petitioner got a handgun from his bedroom. He then pointed the gun at the individuals, fired the gun, threatened to shoot the individuals, and then used the gun to beat up and seriously injure one of the victims, resulting in the victim's loss of an eye.

A witness across the street from Petitioner's home testified that she saw a man holding a black object hitting another individual with the object on the front porch of Petitioner's home. She saw the victim of this beating, who was "covered with blood," "laying on the porch just being hit" and then "roll[ing] off of the porch," "stagger[ing] to an SUV that was in the driveway," and getting into the passenger side of the vehicle. TR vol. II, at 81-85. The witness then observed the individual on the porch "pointing the object that [she assumed] was the gun" at the victim and then proceed to the SUV where he "opened up the passenger side and started hitting [the victim] inside again." Id. at 84-85. She testified that when the police arrived another individual got out of the SUV on the driver's side and that this

individual was also "covered in blood." Id. at 88.

A second witness testified that she saw an individual come out of Petitioner's home "waiving a gun around the yard" and firing shots, yelling at a man on the ground, and then "hitting [the victim on the ground] with the barrel of the gun in the face. . ." while the victim was "trying to cover his face." Id. at 94-96. A law enforcement officer testified that when he arrived at the scene Petitioner was standing on the passenger side of a vehicle parked in the driveway. Petitioner was "pointing a pistol into the car" in which two occupants were sitting. Id. at 114-115. The officer testified that one of the victims was unconscious, that Petitioner's gun was "covered in blood and hair and [what] looked like flesh," and that Petitioner had blood only on his hands and arms. Id. at 117-118. Another officer testified that Petitioner's injuries were "minor." TR vol. III, at 51.

In a statement he gave to law enforcement officers after he was taken into custody, Petitioner stated that he shot at the victims because "they didn't respect him enough" and that he followed them out of his house with his gun. Id. at 50. Although Petitioner testified at trial that he was scared the victims were going to hurt him, there was certainly sufficient evidence presented at the trial that he was not defending himself but either was or became the aggressor.

Petitioner has not demonstrated that the OCCA's resolution of the sufficiency of the evidence issue was contrary to or unreasonably applied the prevailing Jackson standard. Therefore, Petitioner is not entitled to habeas relief concerning this ground.

IV. Double Jeopardy

Petitioner next contends that his convictions for Assault and Battery with a Dangerous Weapon and Maiming violated federal constitutional and Oklahoma statutory prohibitions against double jeopardy. In Petitioner's direct appeal, the OCCA rejected these same double jeopardy claims.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, "consist[s] of three separate constitutional protections," including "protect[ion] against a second prosecution for the same offense after acquittal," "protect[ion] against a second prosecution for the same offense after conviction," and "protect[ion] against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

Petitioner's allegations are directed to the Clause's protection against "multiple punishments." This provision "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." Ohio v. Johnson, 467 U.S. 493, 499 (1984). Consequently, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Id.

In concluding that Petitioner's convictions did not violate Oklahoma law, the OCCA found that there were two "separate and distinct crimes" involved and therefore "no § 11 violation." The OCCA clearly expressed its conclusion that the Oklahoma legislature, consistent with Okla. Stat. tit. 21, §11, intended to allow Petitioner's convictions for the offenses of Assault and Battery with a Dangerous Weapon and Maiming. This conclusion

9

is not subject to habeas review. Estelle v. McGuire, 502 U.S. 62, 68 (1991)(recognizing that federal habeas courts have no authority to reexamine state court interpretations of state laws).

Where legislative intent is clear, the test established in Blockburger v. United States, 284 U.S. 299 (1932), is applied to determine whether the Double Jeopardy Clause of the Constitution has been violated. Under Blockburger, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304.

In Petitioner's appeal, the OCCA applied the Blockburger test to the two challenged offenses. See Davis v. State, 993 P.2d 124, 125 n. 1 (Okla. Crim. App. 1999)("In cases of multiple punishment in a single trial, this court utilizes the 'same evidence' test (whether each offense contains an element not contained in the other)."). The court found that "[a]ssault and battery with a dangerous weapon requires an assault and battery with a dangerous weapon upon another, without justifiable cause, intending to do harm" and "[m]aiming requires infliction of a disabling or disfiguring injury upon another with the intent to cause any injury." Response, Ex. 3, at 3-4. Because "each crime requires proof of evidence which the other does not," the OCCA concluded that the Double Jeopardy Clause was not violated.

The OCCA's application of the Blockburger test was reasonable, and Petitioner has not shown that the appellate court's conclusion was contrary to or an unreasonable application of Supreme Court jurisprudence.

V. Jury Instructions on Self-Defense

In his third ground for habeas relief, Petitioner contends that the trial court erred and denied him due process by not instructing the jury that self-defense is a defense to the offense of Maiming. The OCCA found that the trial court did not abuse its discretion by not *sua sponte* instructing the jury on self-defense with respect to the Maiming offense. Reaching the constitutional issue, the court found that Petitioner "was not deprived of a substantial constitutional or statutory right" because "[n]othing in the record supports the conclusion that the jury's verdict on [the Maiming offense] would have been affected in any way by an instruction on self-defense." Response, Ex. 3, at 4. Petitioner does not argue that the OCCA's decision was incorrect under federal law.

"A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995). The jury in Petitioner's trial was instructed on the defense of self-defense with respect to the offenses of Assault and Battery with a Dangerous Weapon and Pointing a Gun at Another. As the OCCA found in Petitioner's appeal, the jury "had to explicitly reject his self-defense claim" in order to find him guilty of the assault and battery offense with respect to one of the victims and of pointing a gun at both victims. Response, Ex. 3, at 4. The OCCA's finding that Petitioner's trial was not rendered fundamentally unfair as a result of the trial court's failure to instruct the jury on self-defense as to the Maiming offense was not contrary to or an unreasonable application of clearly-established federal law.

11

VI. Cumulative Error

Lastly, Petitioner asserts that accumulated errors at his trial deprived him of a fair trial. In his appeal, Petitioner merely asked the appellate court to generally "analyze the trial errors raised herein" both individually and collectively in determining their cumulative effect on his convictions and sentences. Response, Ex. 1, at 18-19. In one instance, the Supreme Court has vacated the decision of a circuit court on the basis, in part, that "the lower courts erred in failing to assess the cumulative effect of [unlawfully] suppressed evidence with respect to [a defendant's] capital sentence." Cone v. Bell, 556 U.S. 449, 476 (2009). However, at least with respect to non-capital convictions and sentences, cumulative error analysis has never been clearly established by the Supreme Court and never recognized by the Tenth Circuit Court of Appeals as required in contexts other than Sixth Amendment ineffective assistance contexts. Nevertheless, the circuit court has recognized that it has "long conducted cumulative-error analyses in [its] review of federal habeas claims." Hooks v. Workman, 689 F.3d 1148, 1194 n. 24 (10th Cir. 2012).

In this case, no constitutional errors have been found. "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine 'only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.'" Littlejohn v. Trammell, 704 F.3d 817, 868 (10th Cir. 2013)(quoting Young v. Sirmons, 551 F.3d 942, 972 (10th Cir. 2008)). "The crux [of cumulative error] review is whether the defendant's substantial rights were affected."

Willingham v. Mullin, 296 F.3d 917, 935 (10th Cir. 2002)(internal quotations and citation omitted).

The OCCA found "no error" and thus "no accumulated error" occurred with respect to Petitioner's convictions and sentences. Response, Ex. 3, at 4. The OCCA rejected each of Petitioner's claims of constitutional trial error on its merits. The undersigned has concluded that the OCCA's resolution of Petitioner's claims is reasonable under federal law. The Tenth Circuit Court of Appeals has cautioned that the cumulative error doctrine "does not apply . . . to the cumulative effect of non-errors." Hooks v. Workman, 689 F.3d 1148, 1194 (10th Cir. 2012)(quotations and citation omitted). Petitioner has not demonstrated that this conclusion was contrary to or an unreasonable application of prevailing Supreme Court precedent.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____ October 16th, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___26th___ day of ___September___, 2013.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE